1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20

| | |
|---|---|
| NASCO PETROLEUM, L.L.C.,<br><br>               Plaintiff,<br><br>     v.<br><br>CITY OF LOS ANGELES, ESTINEH MAILIAN in her capacity as Chief Zoning Administrator for the City of Los Angeles, VINCENT BERTONI in his official capacity as Director of the Los Angeles Department of City Planning, and DOES 1 THROUGH 50,<br><br>               Defendant. | Case No. 2:23-cv-00884-SPG-MRW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE [ECF NO. 26]** |

21
22
23
24
25
26
27
28

Before the Court is Defendant City of Los Angeles (the "City"), Estineh Mailian in her capacity as Chief Zoning Administrator for the City of Los Angeles, Vincent Bertoni in his official capacity as Director of the Los Angeles Department of City Planning's (collectively, the "Defendants") motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and to strike portions of Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(f), (ECF No. 26 ("Mot.")). Plaintiff Nasco Petroleum, L.L.C., ("Nasco") opposes the motions. (ECF No. 30 ("Opp.")). Having considered the parties' submissions, the relevant law, the hearing on the motion, and the

record in this case, the Court GRANTS, IN PART, and DENIES, IN PART, Defendants' motion.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff Nasco owns and operates oil and gas production wells and water injection and disposal wells ("Wells") located on the "Downtown Los Angeles Drill Site" ("Site"). (ECF No. 1 ¶ 19 ("Compl")).  The Site has been approved for drilling and production of oil since January 31, 1964.  (Compl. ¶ 22, Ex. B.).  The Wells produce oil from beneath an area of property comprising "680 acres in the Los Angeles Downtown Field."  (*Id.* ¶ 25). Pursuant to several agreements adopted shortly after the Site's approval in 1964, drilling occurs in this 680-acre field unit ("Unit") and includes "hundreds of oil and gas leases" ("Leases"), which include Nasco's Wells.  (*Id.*).  Nasco acquired the Site, the Unit, and the Leases in 2013, and is the current operator of the Unit and current lessee under the Leases. (*Id.* ¶ 29).

At the time the Los Angeles Office of Zoning Administration reviewed and authorized the 1964 Plan Approval, the Site was located in a primarily commercial area but "substantial residential improvements [were] in the immediate locality."  (*Id.* ¶ 24). The character of the Site's location remains substantially the same.  (*Id.*).  The 1964 Plan approval that permitted operations pursuant to certain conditions also includes a reservation of authority to the Zoning Administrator to "impose additional conditions or require corrective measures" to protect the "adjacent or surrounding property."  (*Id.* ¶ 22, Ex. B at 50).  The Site is also operated subject to a 1995 modification that allows the redrilling of an existing well (the "1995 Plan Modification").  (Compl. ¶ 28, Ex. C).

On March 8, 2022, Councilmember Kevin de León authored a letter to Defendant Chief Zoning Administrator Mailian ("Defendant Mailian") stating it was de León's understanding that the Office of Zoning Administrator had the authority to call oil operators in for a compliance review.  (Compl. ¶ 42, Ex. D at 58–60).  In the Councilmember's letter, he represented that his office had seen copies of reports from the State of California Natural

Resources Agency Department of Conservation Geologic Energy Management Division ("Cal GEM") that "suggested" the Site "has a troubling pattern of operating outside of legal requirements which has the real potential of putting the health of hundreds of [his] constituents at grave and immediate risk." (Compl., Ex. D at 59). The letter asks Defendant Mailian to "begin any process necessary to swiftly correct this issue. . . ." (*Id.*) According to Plaintiff, it did not receive a copy of the Councilmember's letter until approximately June 22, 2022. (Compl. ¶ 42).

However, the prior year on July 6, 2021, Plaintiff, through its attorneys, had made a request to Councilmember de León pursuant to California Public Records Act ("PRA"), Government Code sections 6250, *et seq*., asking for, among other items, copies of all "writings containing or referring to any communication between Council District 13 and [Cal GEM] . . . that relate or refer to Nasco . . . dated January 1, 2011 to the present." (Compl. ¶ 44, Ex. E at 64). Plaintiff received four documents in response to its PRA Request, "none of which mention any of the issues raised in the March 8, 2022 Letter." (Compl. ¶ 44). Plaintiff, by letter dated July 28, 2022, responded to Councilmember de León's March 8, 2022, letter and sent a copy of its response to the Chief Zoning Administrator. (Compl. ¶ 46, Ex. F).

Subsequently, Plaintiff received three letters from Defendant Mailian. First, Defendant Mailian sent a letter dated September 9, 2022 ("September 9 Letter"), requiring Plaintiff to file "a Plan Approval application for a review of compliance with the conditions" that had previously been imposed. The letter explains that the "purpose of this Plan Approval is to review the operator's compliance with, and the effectiveness of, the conditions established in the subject grant." (Compl. ¶ 48, Ex. G at 74). Defendant Mailian wrote that the Department of City Planning had "learned that [Plaintiff] has received several Notices of Violations, Notices to Comply, and compliance letters issued by multiple regulatory agencies . . . encompass[ing] compliance issues related to odors, fugitive emissions, methane leaks, failure to report emissions data, and the use of microturbines at the Drill Site." (Compl., Ex. G at 75). The September 9 Letter attached

copies of these notices and orders.  (*Id.* at 75).[1]  The September 9 Letter also directed
Plaintiff to contact the Office of Zoning Administration no later than 30 days from the date
of the letter to "coordinate" the filing of the Plan Approval application and further directed
Plaintiff to file no later than 90 days from the date of the letter the Plan Approval
application with any requisite filing fees, as governed by Section 19.01 of the Los Angeles
Municipal Code.  (*Id.* at 77).

Plaintiff, through its attorneys, responded to the September 9 Letter on October 7,
2022, stating that it does not believe there is a legal or factual basis for a Plan Approval
application and that such a requirement would be arbitrary and capricious under the
circumstances.  (Compl. ¶ 50, Ex. H).  Plaintiff also questioned whether the Zoning
Administrator has the legal authority to "unilaterally change any of the conditions of
Nasco's land use permits."  (Compl., Ex. H. at 81).  Plaintiff requested, instead, to
"dialogue" with Defendant Mailian's office to address any concerns.  (*Id.* at 83).

By letter dated November 16, 2022, Defendant Mailian responded (the "November
16 Letter").  (Compl. ¶ 51, Ex. I).  In the November 16 Letter, Defendant Mailian provided
a "courtesy reminder that [Plaintiff] is required to file a Plan Approval application for a
review of compliance."  (Compl., Ex. I at 85).  Defendant Mailian also noted that the
property's use "has discretionary and conditional land use approval from the Office of
Zoning Administration" and that, per the 1964 Plan Approval, the Zoning Administrator
has the authority "to evaluate and impose corrective measures on the subject property's
land use, if necessary."  (*Id.* at 85–86).  Additionally, Defendant Mailian stated that,
"[t]hrough the filing of a Plan Approval," Plaintiff would have to "submit evidence to
substantiate compliance with the conditions of approval" and that, after the Plan Approval
application is submitted, the matter would be "set for a public hearing and the Z[oning]

---

[1] The attachments to this exhibit are disputed in the parties' request for and opposition to
judicial notice.  The Court refers only to the exhibit attached to the Complaint, but notes
that this exhibit states "[s]ee Attachment "C" for copies of the notices and orders."
(Compl., Ex. G at 75).

A[dministration] review will provide the operator an opportunity to present their compliance narrative, and subsequently issue a determination on the compliance status for the drill site." (*Id.* at 86). The November 16 Letter further stated that a failure to file the Plan Approval application "may result in a delinquency status for your land use operation." (*Id.*) Lastly, the November 16 Letter advised Plaintiff of the fees associated with the filing ("$17,695.15"), and stated that, if the Plaintiff failed to file the Plan Approval application by December 5, 2022, the City would file one on Plaintiff's behalf, resulting in a higher fee ("$74,873.93"). (*Id.*).

Thereafter, Plaintiff did not file a Plan Approval application by December 5, 2022. Instead, Plaintiff responded by letter dated December 5, 2022. (Compl. ¶ 52, Ex. J). In the letter, Plaintiff maintained its position that "[Defendant Mailian] has no grounds or authority to unilaterally demand Nasco submit any plan approval (compliance review) application or to demand Nasco [ ] pay any fees associated with such application." (Compl., Ex. J at 90–92). Plaintiff requested Defendant Mailian withdraw her demands.

By letter dated December 15, 2022 ("December 15 Letter"),[2] Defendant Mailian informed Plaintiff that the Department of City Planning would "move forward with nuisance abatement proceedings pursuant to Los Angeles Municipal Code (LAMC) Section 12.27.1." (Compl. ¶ 53, Ex. K). The December 15 Letter further states that the Department of City Planning would be instituting nuisance abatement proceedings because Plaintiff did not file a Plan Approval application and "to address the drill site's operations which have generated numerous complaints, violations, and enforcement actions from multiple regulatory agencies." (Compl., Ex. K at 94). The December 15 Letter also explained the notice procedure for the hearing and advised Plaintiff that:

---

[2] The Court will refer to the September 9, November 16, and December 15, 2022, Letters collectively as the "Letters." These Letters are the entire basis of Plaintiff's second through seventh causes of action and part of the basis of Plaintiff's first cause of action. (Compl. ¶¶ 94–96, 102, 104, 108, 116, 124, 132, 138–44).

> If it is determined that the operation of the land use has created a nuisance or that the [owner or operator] is not in substantial compliance with the conditions of operation, the City shall impose a condition requiring payment of the fee set forth in Section 19.01 N . . . to be paid within 30 days of the effective date of the determination letter.

(*Id.* at 95). The December 15 Letter did not issue any findings, mention delinquency status, or impose any fees. Based on the parties' submissions to date, it appears Plaintiff has not filed a Plan Approval application and has not paid any fees associated with filing a Plan Approval application. Nor has Defendant City filed a Plan Approval application on Plaintiff's behalf or assessed against Plaintiff for failing to file the Plan Approval application. Plaintiff is still operating its business at the Site.

Separately, on December 2, 2022, the Los Angeles City Council approved an ordinance that will "ban new oil extraction and shut down existing operations within 20 years." (Compl. ¶ 84). Ordinance No. 187709 (the "Ordinance") went into effect on January 18, 2023. (*Id.*).

**B.    Procedural Background**

On February 6, 2023, Plaintiff filed the operative Complaint in federal court, alleging seven causes of action under federal and state law: (1) inverse condemnation based on an unconstitutional taking of property; (2) inverse condemnation based on an unconstitutional exaction/condition; (3) violation of procedural due process; (4) violation of substantive due process; (5) violation of equal protection; (6) violation of the first amendment; and (7) request for declaratory judgment, writ of mandate, and "injunctive relief." *See* (Compl.) Plaintiff's first cause of action challenges both the Ordinance and the Letters. Plaintiff's remaining causes of action are all based on the Letters.[3]

---

[3] In its opposition, Plaintiff appears to argue that it has alleged an equal protection cause of action based on the Ordinance as well. However, the allegations of Plaintiff's fifth cause of action for an equal protection violation are based on the Letters. *See* (Compl. ¶¶ 123–28). Thus, the only cause of action challenging the Ordinance is Plaintiff's first cause of action.

On March 30, 2023, Defendants filed the instant motion, as well as a request for judicial notice. (ECF Nos. 26, 26-1). On May 17, 2023, Plaintiff filed its opposition. (Opp.). Plaintiff also filed an opposition to Defendants' request for judicial notice and filed its own request for judicial notice. (ECF Nos. 31, 31-1). Defendants timely replied to the opposition and also filed a second request for the Court take judicial notice of additional court filings. (ECF No. 33 ("Reply"); ECF No. 34).

### C.   Request for Judicial Notice

Defendants request that the Court take judicial notice of six categories of documents: (1) sections of the Los Angeles Municipal Code; (2) a "complete" copy of the September 9 Letter with exhibits; (3) the filings in state court actions Defendants assert are related; (4) example of past Zoning Administration letters requiring drill site operators to file a Plan Approval; (5) miscellaneous correspondence; and (6) miscellaneous court documents. (ECF Nos. 26-1; 33-1). Plaintiff opposes categories 2, 4, and 5, and makes its own requests for the Court to take judicial notice of certain case summaries. (ECF Nos. 31, 31-1, 31-2, 31-3).

Federal Rule of Evidence 201 provides a court may judicially notice facts not subject to reasonable dispute because they are "(1) generally known within the [ ] court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)). A court may also take judicial notice of information and documents that are "made publicly available by government entities" and neither party disputes the accuracy of the information displayed therein. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

Regarding Defendants' requests, the Court will take judicial notice of sections of the Los Angeles Municipal Code (ECF Nos. 26-2–5); copies of petitions from the "related" state court actions (ECF Nos. 7–12); and the complaint and docket from a different case

filed by Plaintiff in federal court (ECF Nos. 25–27).  These documents are either court filings or matters of public record, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella*, 442 F.3d at 746 n.6.; *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (holding a court "may take judicial notice of the records of state agencies and other undisputed matters of public record"). Moreover, Plaintiff does not oppose the Court taking judicial notice of these documents. *See* (ECF No. 31).  For the same reasons, the Court grants Defendants' second request for the Court to take judicial notice of additional court filings, *see* (ECF No. 33-1), as well as Plaintiff's request for the Court to take judicial notice of court summaries. *See* (ECF No. 31-1).

The Court, however, will not take judicial notice of a "complete" copy of the September 9 Letter that is attached to the Complaint as Exhibit G (Compl. ¶ 48, *id* at 73–78).  *See* (ECF No. 26-1 at 4–5; ECF No. 26-6).  According to Defendants, Plaintiff failed to include with the copy of the September 9 Letter attached and incorporated into the Complaint the attachments that were a part of the original September 9 Letter.  Defendants argue the missing attachments "form the basis for why the [Zoning Administrator] sent this first Letter to Plaintiff."  (ECF No. 26-1 at 4).  Plaintiff opposes, arguing that Defendants did not include a declaration to support the authenticity of the "complete" copy of the September 9 Letter and that Defendants are trying to rebut factual allegations based on the Letter's attachments.  Though it is true that, if the original September 9 Letter contained the attachments, a failure to include the attachments as exhibits to the September 9 Letter that is attached to the Complaint renders that exhibit incomplete and possibly misleading.  Nevertheless, at the pleading stage, because the attachments contain disputed facts upon which the Court does not rely in deciding the motions, the Court will decline to take judicial notice of these documents.  *See* (ECF No. 26-6); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

1    Additionally, the Court declines to take judicial notice of correspondence between
2    the Defendants and other drill operators.  (ECF Nos. 26-13–24).  Defendants argue these
3    letters from administrative agencies are matters of public record.  (ECF No. 26-1 at 5).
4    Plaintiff opposes, arguing that the Defendants' treatment of other oil operators is a disputed
5    matter.  The Court agrees.  While administrative agency letters may be judicially noticeable
6    in other circumstances, these letters do not amount to an "undisputed matter[ ] of public
7    record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1
8    (9th Cir. 2004).  The Court therefore denies Defendants' request for judicial notice of this
9    correspondence.

10   **II.    LEGAL STANDARDS**

11        **A.    Motion to Dismiss Under Rule 12(b)(1)**

12        Federal Rule of Civil Procedure Rule 12(b)(1) provides that an action may be
13   dismissed for lack of subject matter jurisdiction.  When subject matter jurisdiction is
14   challenged, "[t]he party seeking to invoke the court's jurisdiction bears the burden of
15   establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).
16   A Rule 12(b)(1) motion will be granted if the complaint, considered in its entirety, fails on
17   its face to allege facts sufficient to establish subject matter jurisdiction.  *See Savage v.*
18   *Glendale Union High Sch.*, 343 F.3d 1036, 1039 (9th Cir. 2003).

19        **B.    Motion to Dismiss Under Rule 12(b)(6)**

20        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include
21   "a short and plain statement of the claim showing that the pleader is entitled to relief."  A
22   complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of
23   Civil Procedure 12(b)(6).  When resolving a motion to dismiss for failure to state a claim,
24   courts "must consider the complaint in its entirety, as well as other sources courts ordinarily
25   examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents
26   incorporated into the complaint by reference, and matters of which a court may take judicial
27   notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  "Dismissal
28   under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory

or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While a plaintiff need not supply a "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

On a motion to dismiss, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). This liberal standard, however, "applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008), or "legal conclusions cast in the form of factual allegations." *Lleto v. Glock Inc.*, 349 F.3d 119, 1200 (9th Cir. 2003). While the court applies this liberal interpretation to plaintiff's allegations, it "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### C.    Motion to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1525, 1527 (9th Cir. 1993)). However,

"[m]otions to strike are generally disfavored by courts." *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, No. 90-55868, 1991 U.S. App. LEXIS 10273, at *6 (9th Cir. May 9, 1991) (citation omitted); *see also Pease v. Curren Ref., Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990 (citations omitted). Whether to grant a motion to strike lies within the sound discretion of the district court. *See* Fed. R. Civ. P. 12(f).

## III.   DISCUSSION

Defendants move to dismiss each of Plaintiff's causes of action insofar as each is based on the Letters, arguing pursuant to Rule 12(b)(1) that Plaintiff has no Article III standing to bring these claims and that the causes of action are not ripe for adjudication. (Mot. at 19–22). Defendants also argue pursuant to Rule 12(b)(6) that Plaintiff's claims, insofar as they are based on the Letters, fail to state a cause of action. (Mot. at 2–3). In addition, Defendants request pursuant to Rule 12(f) that the Court strike references in Plaintiff's first cause of action to the Letters as redundant and immaterial and strike Plaintiff's prayer for punitive damages as irrelevant, immaterial, and contrary to law. Finally, pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976), Defendants argue the Court should abstain from adjudicating Plaintiff's first cause of action, insofar as it challenges the constitutionality of the Ordinance under state and federal law and should, instead, either dismiss or stay the first cause of action. (Mot. at 4). The Court addresses each argument in turn.

### A.   Rule 12(b)(1) Motion to Dismiss All Causes of Action for Lack of Standing

Defendants move to dismiss each of Plaintiff's causes of action pursuant to Rule 12(b)(1), arguing that, insofar as these claims are based on the Letters, Plaintiff has no Article III standing to bring these claims and the causes of action are not ripe. (Mot. at 2).[4]

---

[4] Defendants do not challenge Plaintiff's standing to challenge Plaintiff's First Cause of Action, insofar as it challenges the Ordinance. As discussed later in this opinion,

Plaintiff responds that it has standing because the Letters have already harmed Plaintiff and threaten imminent harm in the future; the harm is traceable to Defendants' actions; and the issues raised are both redressable by the Court and ripe for review.

### 1. Article III Standing

The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. Const. art. III, § 2.  A plaintiff invoking federal jurisdiction must meet three requirements to establish Article III standing: First, the plaintiff must demonstrate it suffered an "injury-in-fact," an invasion of a legally protected interest that is concrete and particularized, actual or imminent, not conjectural or hypothetical; second, the plaintiff must establish "causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," not the result of the independent action of a third party not before the court; and third, the plaintiff "must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (cleaned up); *Lujan*, 504 U.S. at 560–61; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013).  These three "requirements together constitute the 'irreducible constitutional minimum' of standing." *Vermont Agency of Nat. Res.*, 529 U.S. 771 (quoting *Lujan*, 504 U.S. at 560).  The three standing elements are not mere pleading requirements, but rather an indispensable part of the plaintiff's case.  *Lujan*, 504 U.S. at 561.  The plaintiff must demonstrate standing separately for each type of injury and form of relief sought in the action.  *See Friends of the Earth v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 185 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross.").  "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required" at each

---

Defendants argue, instead, that the Court should abstain from adjudicating the issue because of pending state proceedings.

successive stage of the litigation." *Lujan*, 504 U.S. at 561. Thus, when standing is challenged at the pleading stage on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice" because the court must accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and presume the plaintiff's general allegations embrace the specific facts that are necessary to support the claim. *Id.*; *California Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1049 (9th Cir. 2023)

a)    *Injury-in-fact*

Defendants contend that, insofar as Plaintiff's causes of action are based on the Letters, Plaintiff's allegations do not establish it has suffered an injury-in-fact, as opposed to a mere hypothetical injury, because Plaintiff has not been ordered to cease its drilling operations (nor has Plaintiff done so), Plaintiff has not actually been assessed any fees, and Plaintiff has not actually paid any fees. (Mot. at 20–21; Reply at 8–9).

Plaintiff responds that the Complaint's allegations clearly demonstrate that it has already suffered past harm based on the Letter because Defendants' actions have resulted in a taking of Plaintiff's property rights, deprived Plaintiff of due process and adversely impacted the value of Plaintiff's property interests. (Opp. at 11). Specifically, Plaintiff argues Defendants have "invaded [Plaintiff's] legally-protected interests" by attempting to impose fees without any legitimate permissible authority and by "falsely claiming" Plaintiff's operations are in delinquency status. (Opp. at 11–12; Compl. ¶¶ 87, 89–90). Plaintiff alleges Defendants have deprived Plaintiff of due process by "pre-adjudicat[ing]" Plaintiff's purported nuisance violations without a hearing. (Opp. at 12; Compl. ¶¶ 62–68). Plaintiff also alleges Defendants have impacted the value of Plaintiff's property interests by "plac[ing] a cloud over" those interest and reducing the market value of the Wells." (Opp. at 12). Finally, Plaintiff argues that it has sufficiently alleged a substantial risk of future harm because Defendants have threatened to "shut down" Plaintiff's operations without due process and have also threatened to retaliate against it by, among

-13-

other acts, unilaterally filing a Plan Approval application and imposing the higher fees associated with doing so.  *See* (Opp. at 13–14, 17; Compl. ¶¶ 55, 104, 108, 131–33).[5]

The Court finds, insofar as Plaintiff's first through seventh causes of action are based on the Letters, Plaintiff has not sufficiently shown the first element of standing based on an alleged taking of Plaintiff's property interest, deprivation of Plaintiff's due process rights, or Defendant's alleged threats of retaliation.  As set forth above, to demonstrate an injury in fact sufficient to confer standing, Plaintiff must allege facts showing it has suffered "an invasion of a legally protected interest" that is "concrete and particularized," and is either "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted); *Shulman v. Kaplan*, 58 F.4th 404, 408 (9th Cir. 2023).

From the Court's review of the Complaint, the "legally protected interests" Plaintiff alleges have been invaded are its interests in the oil and gas leases, its oil reserves and in the previously approved Plan Approval, as well as all benefits thereunder.  *See* Opp. at 11 (stating Plaintiff "has a present, legally-protected interest both in its oil and gas leases, its oil reserves and other property interests, as well as the Plan Approval and all benefits thereunder."); *see also* Compl. ¶ 27 (alleging interest in the vested Plan Approval), *id.* ¶ 31 (alleging interest in the rights and benefits under vested Plan Approval, *id.* ¶ 34 (alleging interest in the oil and gas leases), *id.* ¶ 35 (alleging interest in the oil and gas reserves).  As Plaintiff's allegations acknowledge, the September 9 and November 16 Letters ask Plaintiff to file a Plan Approval application to determine if Plaintiff is complying with the conditions imposed under the original 1964 Plan Approval and 1995 Plan Modification Plan Approval, as well as to pay the filing fee associated with the requested application.  *See* (Compl. ¶¶ 47, 51).  Although Plaintiff's allegations assert that Defendants' transmittal of the requests through the Letters alone amounts to a "taking" of Plaintiff's claimed interests,

---

[5] Plaintiff does not address Defendants' argument that Plaintiff's allegations regarding reputational harm are insufficient.  *See* (Mot. at 21).

Plaintiff's allegations do not demonstrate an injury that is concrete, particularized, and actual to the legally protected interests upon which Plaintiff basis its causes of action.

Specifically, Plaintiff has not plausibly alleged that Defendants' mere "attempt to impose" a filing fee pursuant to Section 19.01 of the LAMC[6] has resulted in any injury to Plaintiff's claimed interests in its oil and gas leases, oil and gas reserves, or Plan Approval and benefits. *See* (Opp. at 11). In fact, the Complaint does not allege facts demonstrating that paying the filing fee alone would have any impact on Plaintiff's leases, reserves, or Plan Approval. Nor has Plaintiff filed the application, paid the filing fee, or had any filing fee amount assessed against it. Plaintiff also has not provided any authority for the proposition that Defendant's mere request for Plaintiff to submit an application or pay a filing fee, without Plaintiff actually paying the filing fee, is sufficient to demonstrate an injury-in-fact for standing purposes. To the contrary, courts have found it is the actual payment of the filing fee under such circumstances that demonstrates an injury-in-fact. *See Whittington v. Maes*, 655 Fed. App'x 691, 697 (10th Cir. 2016) ("Paying a required fee establishes injury in fact."); *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006) ("Figueroa suffered an injury-in-fact from actually paying patent fees. . . . Figueroa thus has standing to challenge the legality of the fees that he paid.").

Similarly, although Plaintiff argues in its Opposition that Defendants made purported "fals[e] claim[s]" of delinquency" through the November 16 Letter, *see* (Opp. at 11–12), the Complaint instead alleges the November 16 Letter stated that, if Plaintiff failed to submit an application, that failure "*may* result in a delinquency status for [Plaintiff's] land use application." (Compl. ¶ 51 (emphasis added)). The Complaint does not allege that Plaintiff was in fact placed in delinquency status. Nor does the Complaint allege that

---

[6] Section 19.01 of the LAMC, titled "Filing Fee - Applications And Appeals," provides that, "[b]efore accepting for filing any application or appeal involving any of the matters specified in this section, the Department of City Planning shall charge and collect for each application or appeal [ ] filing fees," and sets forth the amounts to be collected for each action.

the mere threat alone of possibly being placed in a delinquency status has injured Plaintiff's interests in the oil and gas leases, reserves, or Plan Approval in manner that rises to the level of an actual, concrete, and particular, taking or other injury. *See, e.g.*, *Shulman*, 58 F.4th at 408.

Plaintiff also has not sufficiently alleged an actual injury based on its claim that "the Letters have essentially pre-adjudicated [Plaintiff's] nuisance violations," which purportedly violates Plaintiff's due process rights. (Opp. at 12). Plaintiff's argument is based on its allegations that Defendants requested the Plan Approval application be filed and filing fees be paid before the initiation of nuisance abatement proceedings. *See* (Compl. ¶¶ 62–63; Opp. at 12, 17). As stated previously, Plaintiff did not submit the Plan Approval application or pay any filing fees in response to the Letters. Moreover, as the Complaint acknowledges, "[t]o abate a nuisance under the Municipal Code, Section 12.27.1 requires the City to provide notice, hold a hearing, and for the Planning Director to make written findings based on evidence which the Director has observed." (Compl. ¶ 58). Consistent with that requirement, the Complaint alleges that the December 15 Letter notified Plaintiff that "the City will move forward with administrative nuisance abatement proceedings pursuant to Los Angeles Municipal Code (LAMC) Sections 12.27.1." *See* Compl. ¶ 53, 94). During oral argument on this motion, the parties confirmed that an administrative hearing has been scheduled.[7] *See also* (ECF Nos. 36, 36-1). Plaintiff thus has not shown that it suffered a concrete, actual injury based on the Letter's alleged pre-adjudication of any asserted nuisance violations.

The Court also finds that Plaintiff has not established an injury in fact based on future harm. Plaintiff argues that it faces a "substantial risk" that Defendants may unlawfully

---

[7] Defendants have filed a notice of administrative proceedings related to this case. (ECF No. 36). Although Defendants have notified the Court that a hearing was scheduled, the Court has not been notified that the hearing has taken place or that the Planning Director has made any written findings. Thus, Plaintiff also has not shown that there is any "decision that allegedly harmed [it]" for Defendants to "reconsider." *See Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

interfere with Plaintiff's operations in the future because Defendants have not "rescind[ed]" the "demands and fines" in the Letters. (Opp. at 14). During the hearing on the motion, Plaintiff's counsel argued that Article III standing is satisfied because Defendants "may sometime in the future" renew its demands in the Letters. However, Plaintiff's position is not supported by any allegations or evidence to suggest that this purported injury is "certainly impending." *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (rejecting an "objectively reasonable likelihood" of future harm and holding that threatened injury must be "certainly impending to constitute injury in fact"); *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the actual or imminent injury that our cases require." (emphasis in original) (cleaned up)). Thus, Plaintiff has not sufficiently established a future injury required for Article III standing based on Defendants' failure to rescind the demands contained in the Letters.

Plaintiff also asserts, as part of its arguments for ripeness, that it has established an injury-in-fact arising from "Defendants' intent to punish [Plaintiff] for exercising its First Amendment right to contest their unconstitutional demands" in the form of the City "unilaterally fil[ing] a Plan Approval Application and impos[ing] fees on [Plaintiff] to do so," which Plaintiff claims "chill [Plaintiff's] First Amendment right[s]." (Opp. at 17). These allegations of future retaliation, however, are not sufficient to demonstrate an injury-in-fact.

To establish standing in a First Amendment retaliation case, a plaintiff must show the same three standing elements that form the "irreducible constitutional minimum' of Article III standing are met. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560)). While it is true that courts apply the three requirements of standing "less stringently in the context of First Amendment claims," *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010), a plaintiff may not "bring a First Amendment claim by nakedly asserting that his or her speech was chilled." *Twitter*, 56

1    F.4th at 1175 (internal quotation marks and citation omitted). Instead, "[i]n the First
2    Amendment context, 'the injury-in-fact element is commonly satisfied by a sufficient
3    showing of self-censorship, which occurs when a claimant is chilled from exercising his
4    right to free expression." *Id.*

5        Here, Plaintiff asserts as a "bare legal conclusion" that Defendants' "actions chill
6    [Plaintiff's] First Amendment right[s]." (Opp. at 17). Plaintiff does not allege sufficient
7    facts demonstrating "self-censorship" or any other facts plausibly showing its right to free
8    expression was chilled. *See Twitter*, 56 F.4th at 1174. Plaintiff's only factual allegation in
9    support of its contention is its assertion that Defendants, in the November 16 Letter,
10   "claim[ed] it [would] unilaterally file a Plan Approval Application and impose the fees on
11   [Plaintiff]," in "retaliation" for Plaintiff's refusal to comply with the allegedly improper
12   demand for Plaintiff to file a Plan Approval Application and/or pay fees. (Opp. at 17;
13   Compl. ¶ 51, Ex. I). The November 16 Letter did set a deadline for Plaintiff to file the
14   alleged Plan Approval Application "by December 5, 2022," and states Plaintiff's "failure
15   to file the application will result in the City filing the application on [Plaintiff's] behalf."
16   (Compl., Ex. I at 86). However, Plaintiff did not file the application or pay any filing fees,
17   nor has Plaintiff alleged that Defendant City filed an application on Plaintiff's behalf or
18   imposed fees as a result. Instead, as Plaintiff acknowledges in the Complaint and
19   incorporated documents, Defendant City commenced the administrative proceedings "to
20   address the drill site's operations," which had been the focus of "numerous complaints,
21   violations and enforcement actions from multiple regulatory agencies." (Compl. ¶ 51, Ex.
22   I at 94). Thus, Plaintiff has not sufficiently alleged either an actual injury or a substantial
23   risk that any future harms asserted in the November 16 Letter will certainly occur. *In re*
24   *Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citing *Susan B. Anthony List v.*
25   *Driehaus*, 134 S. Ct. 2334 (2014) (cleaned up)). Accordingly, the Court finds based on the
26   allegations in the Complaint and its exhibits that Plaintiff has not plausibly established an
27   injury-in-fact regarding Defendants' alleged retaliation. *See Lopez v. Candaele*, 630 F.3d
28   775, 787 (9th Cir. 2010) ("Mere allegations of a subjective chill are not an adequate

substitute for a claim of specific present objective harm or a threat of specific future harm." (cleaned up)).

Lastly, Plaintiff argues that the value of its business was negatively impacted by, at least, the November 16 Letter, which stated that a failure to file the Plan Approval application "may result in a delinquency status for [Plaintiff's] land use operation." (Compl. ¶¶ 51, 87, 92, Ex. I at 86). Plaintiff alleges that the "false[]" claims of delinquency have "plac[ed] a cloud over" and decreased the value of Nasco's property interests, "have impeded Nasco's ability to attract investment," and "reduced [the] market value of the Wells." (Opp. at 11–12).

In the takings context, "[a] specific, concrete, and particularized allegation of a reduction in the value of property owned by the plaintiff is sufficient to demonstrate injury-in-fact at the pleading stage." *Barnum Timber Co. v. U.S. E.P.A*., 633 F.3d 894, 898 (9th Cir. 2011) (cleaned up). *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1013 n.3 (1992) (noting that, at the pleading stage, "[n]o more can be reasonably demanded" to establish an injury in fact than "asking [for] damages for the temporary taking of his property"). Thus, at this stage, Plaintiff's allegations are arguably sufficient to plead an injury-in-fact. However, as discussed below, Plaintiff's showing of standing based on these allegations fail for another reason.

### b)    *Traceability and Redressability*

For the second and third elements of Article III standing, a plaintiff must demonstrate that its "injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that the injury is redressable by the relief sought by the plaintiff. *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (citation omitted). For causation, while the injury does not have to be caused solely by the defendant, "[i]n cases where a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the Supreme Court and this court have found the causal chain too

weak to support standing at the pleading stage." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011).

Here, Defendants argue that any impact on the value of Plaintiff's business is not traceable to Defendants' actions. Instead, any decrease in value to Plaintiff's property is due to other enforcement notices that preceded the Letters, such as the "CalGEM and South Coast AQMD enforcement orders and notices regarding the manner in which the Drill Site was operated and the negative effect of odors, gases, etc. on the surrounding community," as well as "[Plaintiff's] own underlying operations and activity at the Drill Site which triggered th[ose] enforcement orders." (Mot. at 21 (citing *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42–43 (1976)). In response, Plaintiff argues that "even if the diminution of value to [Plaintiff's] property may be caused by something else, it does not mean it cannot also be caused by Defendants' actions." (Opp. at 15 (emphasis omitted)).

Given the number of third parties that have raised issues with Plaintiff's site, which is clearly demonstrated by the allegations of the Complaint and exhibits incorporated thereto, the Court agrees that Plaintiff has not shown sufficient causation to establish standing. Plaintiff acknowledges that it has received other notices from other agencies and individuals. (Compl. ¶¶ 39–46; Ex. G; Ex. I; Ex. K). Also, the Letters, attached to Plaintiff's Complaint indicate that Plaintiff has received multiple letters, notices, and violations, some of which are referenced in the Letters and, according to representations in the Letters, serve as the basis for the Letters. (Compl. ¶ 48, Ex. G; Compl. ¶ 51, Ex. I; Compl. ¶ 53, Ex. K). Additionally, the Councilmember's March 8, 2022, letter to Defendant Malian asserts that his "office has seen copies of [CalGEM] reports . . . which suggest that this site has a troubling pattern of operating outside of legal requirements which has the real potential of putting the health of hundreds of my constituents at grave and immediate risk."[8] (Compl. ¶ 42, Ex. D at 58–59). The authors of these reports are not

---

[8] Although the Court notes the existence of the Notice of Violations, Notices to Comply, and compliance letters, as referenced in the Letters, the Court declines to consider the disputed matters contained therein.

defendants in this case. *See Simon*, 426 U.S. at 41–42 (1976) (no standing when injury caused by a hospital but "no hospital is a defendant"). Because of the likelihood that any decrease in the value of Plaintiff's interests is, in large part, fairly traceable to third parties whose independent notices are not before this Court, *see Maya*, 686 F.3d at 1070, the causal chain Plaintiff asserts is too weak to support a finding of standing.

Moreover, for the same reasons, the Court finds that Plaintiff has also not shown redressability, given that the alleged impact on Plaintiff's business appears largely to be related to third parties not before the Court. *See Simon*, 426 U.S. at 42. Further, as stated previously, Plaintiff has not sufficiently alleged that it has suffered any other type of injury-in-fact: It is still operating its business, it has not filed a Plan Approval application, and it has not paid any filing fees.[9] Plaintiff has therefore failed to satisfy the redressability requirement to establish standing.

2.    Ripeness

Defendants also argue that Plaintiff's causes of action, insofar as they are based on the Letters, are not ripe because the City has not made a final determination regarding "whether the Drill Site is a nuisance or requires imposition of corrective conditions." (Mot. at 22–23; Reply at 10–11 (citing Compl. ¶¶ 47–58). In response, Plaintiff largely repeats its arguments in support of standing, arguing that its takings claims are ripe because Defendants' Letters amount to a final decision on [Plaintiff]'s land use, prejudge [Plaintiff]'s alleged nuisance violation, and "threaten[] [Plaintiff] with additional imminent harm." (Opp. at 16–17). Because Plaintiffs have failed to demonstrate Article III standing, the Court need not reach the ripeness issue. However, even if Plaintiff had sufficiently shown all three elements of standing, the Court's consideration of this Action would be precluded by the particular ripeness doctrine that applies to takings actions based on local zoning laws.

---

[9] Nor has Plaintiff notified the Court that a determination has been made that its operation of the Site has been adjudicated as a nuisance.

-21-

"Standing and ripeness under Article III are closely related." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). The constitutional ripeness inquiry generally "coincides squarely with standing's injury in fact prong." *Sacks v. Off. of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). "In the area of land use, the doctrine of ripeness is intended to avoid premature adjudication or review of administrative action." *Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 568 (9th Cir. 1988). "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco, California*, 141 S. Ct. 2226, 2228 (2021). Finality does not require administrative exhaustion, and instead is established "[o]nce the government is committed to a position," ensuring that "a plaintiff has actually been injured by the Government's action." *Pakdel*, 141 S. Ct. at 2230–31 (citing *Horne v. Department of Agriculture*, 133 S. Ct. 2053 (2013)). If attempts to comply with the finality requirement would be futile, finality is not required; but a party cannot rely on this "futility exception until he or she makes at least one meaningful application." *Herrington*, 857 F.2d at 569.

Here, Plaintiff's causes of action[10] are not ripe for adjudication because no conclusive determination has been made. *Pakdel*, 141 S. Ct. at 2231. Insofar as Plaintiff's

---

[10] The Court notes that when other constitutional claims relate to the same process as challenged in the Fifth Amendment cause of action, courts can "apply the same ripeness standards" to those related causes of action. *Herrington*, 857 F.2d at 569 n.1 (finding "no reason, under the circumstances of this case, to apply a different standard to [Plaintiff's] procedural due process claim, . . . its equal protection and substantive due process claims, [which] relate[] to the *process* by which the County reached its conclusion" (emphasis in original)); *see also Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1456 (9th Cir.), *amended*, 830 F.2d 968 (9th Cir. 1987) (affirming dismissal on ripeness of substantive due process claims based upon the same alleged violations as the unripe Fifth Amendment claims); *Norco Const., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986) ("[C]laims for inverse taking, and for alleged related injuries from denial of equal protection or denial of

claims are based on the three Letters from Defendants, the claims are not ripe. The Letters do not issue a final decision regarding Plaintiff's use of its property, but instead notify Plaintiff that administrative proceedings have been initiated. Additionally, Plaintiff has not alleged sufficient facts to support its contention that "Defendants have already prejudged Plaintiff" thus, the futility exception has no application here. (Opp. at 16). In its Complaint, Plaintiff cites to section 12.27.1(C)(3) of the Los Angeles Municipal Code ("LAMC"), which states:

> Upon any finding of nuisance or non-compliance with existing conditions imposed on the land use or discretionary zoning approval, the Director's determination shall impose a condition requiring the business operator or property owner to file a Plan Approval application for Review of Compliance with Conditions within two years of the effective date. At the discretion of the Director, the due date for the Plan Approval application can be set for 90 days, 180 days, one year, 18 months or two years from the effective date of the Director's determination or the Council action on appeal.

(Compl. ¶ 63). However, the fact that Defendants asked for a Plan Approval application before the hearing does not render Plaintiff's appearance at the hearing futile. *Cf. Herrington*, 857 F.2d at 569 (finding that a formal application after an inconsistency determination would have been futile because the only way to obtain approval would be through a "[p]lan amendment" that several officials testified the Plaintiffs had "no chance" of receiving). Thus, Plaintiff has not shown its takings dispute is ripe for adjudication.

Accordingly, under Rule 12(b)(1), the Court grants Defendants motion to dismiss Plaintiff's first cause of action, insofar as it is based on the Letters, as well as Plaintiff's remaining causes of action.[11]

---

due process . . . are not matured claims until [the Government] make[s] a final determination on the status of the property.").

[11] Defendants argue that Plaintiff's seventh cause of action is "derivative" of claims one through six and thus fail for the same reasons. (Mot. at 28). Plaintiff argues that because its seventh cause of action is based on its "Ordinance claim," it survives Defendants' motion to dismiss. (Opp. at 24–25). Plaintiff's seventh cause of action seeks injunctive

However, as the Court has not found that amendment would be futile, the Court dismisses Plaintiff's first through seventh causes of action, as set forth above, without prejudice.

### B.    Punitive Damages

Defendants argue pursuant to Rule 12(f) and, alternatively, Rule 12(b)(6) that the Court should strike Plaintiff's request for punitive damages because punitive damages against local governments are precluded as a matter of law.  (Mot. at 34–35).  Although Defendants rely on a district court opinion stating that punitive damages requests against governmental entities can be stricken, that Ninth Circuit has held "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010).  Instead, a motion challenging a request for such damages is more properly brought under Rule 12(b)(6), which Defendants have asserted in the alternative. *Id.*

Regarding their Rule 12(b)(6) motion, the Supreme Court has held that "[d]amages awarded for punitive purposes . . . are not sensibly assessed against the governmental entity itself." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981).  The Court explained, "[p]unitive damages by definition are not to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Id.* at 266–67.  An award of punitive

---

and declaratory relief alleging in pertinent part that Defendants have a duty to comply with the procedures for nuisance abatement proceedings laid out in the municipal code and that Defendants have violated that duty by demanding Plaintiff engage in procedures not provided by the Municipal Code and threatening Plaintiff with revoking its land use permits for not engaging in such illegal procedures.  (Compl. ¶ 142).  Thus, as with Plaintiff's first through sixth causes of action, Plaintiff's seventh cause of action complains of Defendants' conduct involving the Letters.  As such, for the same reasons as set forth above regarding Plaintiff's first through sixth causes of action, Plaintiff lacks standing for its seventh cause of action based on the Letters.  That cause of action is therefore dismissed.

damages against a municipality only "punishes" "taxpayers, who took no part in the commission of the tort," not the actual wrongdoer.  *Id*. at 267.  Therefore, the punitive damages plaintiff seeks against Defendants are not recoverable against the Defendants.  *See id.*  Indeed, Plaintiff appears to acknowledge this fact, stating that "Nasco is prepared to stipulate to striking any punitive damage claims from the Complaint." (Opp. at 8 n.1). Thus, the Court grants Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's request for punitive damages.[12]

### C.    Stay or Dismissal Under *Pullman* and *Colorado River* Abstention Doctrines

Defendant argues that the Court should abstain or stay Plaintiff's first cause of action for a violation of the federal and state constitution, insofar as it is based on the Ordinance,[13] because the constitutionality of the Ordinance is already being challenged in state courts. Defendants contend that *Pullman* abstention is appropriate because the Ordinance is an untested, new local land use law the adjudication of which would redress the Plaintiff's Complaint.

Plaintiff maintains that a federal forum is appropriate in large part because its federal and state constitutional allegations are unique to this case and not redressable by state adjudications.  Further, Plaintiff argues that it could not obtain relief from the state court

---

[12] Defendants also ask the Court to strike as "redundant and immaterial" all allegations in Plaintiff's first cause of action that refer to the Letters arguing that these allegations "repeat[] the same allegations in Cause[s] of Action Two through Six."  (*Id*. at 3).  Because the Court has determined Plaintiff lacks standing to bring its causes of action, insofar as they are based on the Letters, the court denies Defendants' request as moot.

[13] In its opposition, Plaintiff argues that it also alleged an equal protection challenge to the Ordinance, and that "[t]he Complaint [ ] alleges that the City has singled out oil and gas operators for disparate treatment in comparison to other industrial operators."  (Opp. at 22 (citing Compl. ¶¶ 83–85; 97–98)).  From its review of the Complaint, the Court disagrees with Plaintiff's characterization of its allegations.  The Complaint attacks the Ordinance based on the taking clause, (Compl. ¶¶ 83–86; 94–100), and attacks the conduct by Defendants in its equal protection claim.  (Compl. ¶¶ 123–28).

actions because it is not a party to those suits and it claims that the twenty-year amortization period under the Ordinance is not just compensation for Plaintiff's property. (Opp. at 26).

The Ninth Circuit has long held that *Pullman* abstention is appropriate in land use cases when three prongs are met: "(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open[;] (2) [s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy[;] (3) [t]he possibly determinative issue of state law is doubtful." *Sinclair Oil Corp. v. Cnty. of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996) (internal citation omitted); *VH Prop. Corp. v. City of Rancho Palos Verdes*, 622 F. Supp. 2d 958, 963 (C.D. Cal. 2009). The first *Sinclair* prong is satisfied here because it is undisputed that the Ordinance is a local land use policy. *E.g.*, *Sinclair Oil Corp.*, 96 F.3d at 409 ("[T]his Court has consistently held that land use planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention." (citations and quotations omitted)).

The second *Sinclair* prong also is satisfied. This prong "requires only that [a] state law question . . . has the potential of at least altering the nature of the federal constitutional questions." *Windeler v. Cambria Cmty. Water Dist.*, Case No. CV 17-8536 DSF (JEMx), 2018 WL 7504406, at *4 (C.D. Cal. Mar. 12, 2018) (quoting *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 378 (9th Cir. 1983) (alterations in original). "In land use cases, the Ninth Circuit has frequently found this requirement satisfied where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks." *City of Rancho Palos Verdes*, 622 F. Supp. 2d at 963. Here, Plaintiff's prayer for relief seeks, in part, a declaratory judgment as to whether the "the Ordinance is unconstitutional, invalid, and unenforceable," apparently based on Plaintiff's first cause of action, given its allegations. *See* (Compl.). The state court actions also bring constitutional challenges under the California constitution and the U.S. Constitution against the Ordinance. *See* (ECF No. 26-8 ¶¶ 151–56 (requesting a declaratory judgment finding that the Ordinance is invalid under the California and U.S. Constitutions); ECF No. 26-9 ¶¶ 135–44 (same); ECF

No. 26-12 (relating state cases)).    Thus, if the state court declared the Ordinance unconstitutional under either the state or federal constitution, Plaintiff would be provided with, at a minimum, a part of the relief it seeks in this Court.  Therefore, the second *Sinclair* prong is satisfied.

Similarly, the Court finds that the third prong is satisfied in this case.  The third prong "require[s] only a minimal showing of uncertainty in land use cases." *City of Rancho Palos Verdes*, 622 F. Supp. 2d at 965 (C.D. Cal. 2009) (citing *Sinclair*, 96 F.3d at 405). "A local government's enactment of land use regulations is by nature a question turning on the peculiar facts of each case in light of the many applicable local and state-wide land use laws." *Sinclair*, 96 F.3d at 410.  Even if a party does "not raise a novel claim of statutory interpretation," a challenge to a local ordinance may still be uncertain when "the [law] itself has not yet been challenged in the state courts." *Id.*; *Redondo Beach Waterfront, LLC v. City of Redondo Beach*, No. 2:17-CV-04645-SVW-JEM, 2018 WL 5263174, at *4 (C.D. Cal. Jan. 31, 2018) ("[D]isputes relating to new ordinances governing land use and their application to vested rights are of sufficient uncertainty to require *Pullman* abstention."); *cf. Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236–37 (1984) (holding abstention inappropriate when the challenged law was not ambiguous and thus not likely to be construed in an uncertain way).

Here, the challenged Ordinance is a new ordinance governing land use and vested rights.  It "ban[s] new oil extraction and shut[s] down existing operations within 20 years" by amending several sections of the Los Angeles Municipal Code. (Compl. ¶ 84).  Plaintiff alleges that "the Ordinance virtually eliminates the economic value of [Plaintiff]'s vested interests in the oil and gas reserves beneath the Unit, the Wells, and all of [Plaintiff]'s other facilities the Leases and the Unit Agreement and effects a temporary and permanent taking of [Plaintiff]'s property rights without just compensation." (Compl. ¶ 86).  While the California constitutional provision Plaintiff raises may be substantively similar to the federal takings clause, deciding whether the Ordinance is constitutional under the

California constitution will involve, at the very least,[14] interpretation of the Los Angeles Municipal code and Plaintiff's vested rights thereunder.  (Opp. at 27); *Patel v. City of Los Angeles*, 455 F. App'x 743, 744–45 (9th Cir. 2011) ("Relying on the fact that land use claims are local in nature and involve the interpretation of various state and local land use laws, we have required only a minimal showing of uncertainty to satisfy the third Pullman factor in land use cases.").[15]  Additionally, neither party has identified *any* California decisions considering this Ordinance or an ordinance similar in impact or scope.  *Sinclair*, 96 F.3d at 410 (finding uncertainty when the challenged law "itself has not yet been challenged in the state courts"); *see also Pearl Invest. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1465 (9th Cir.1985) (holding that "[u]ncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law").  The Court therefore finds that the third *Sinclair* prong is satisfied.

Ultimately, the Court is convinced that "the potential for . . . a narrowing of the constitutional issues and the principles of comity that will be furthered by allowing the state courts to first pass on the validity of this municipal ordinance under state law are

---

[14] The Court takes judicial notice that many of the state petitioners identify several other state laws and government codes that may render the Ordinance invalid.  *See, e.g.*, (ECF No. 26-8 ¶¶ 106–13 (alleging that the Ordinance is unlawful under Government Code § 65860)).  The Plaintiff does not allege those violations, nevertheless the Court declines to find that the area of law concerning the validity of this Ordinance is free from uncertainty.

[15] While this standard of uncertainty may be lower than in Plaintiff's cited case, *Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 940 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002), that case differs from this one in an important respect.  In *Fireman's Fund*, the challenged law dealt with waste remediation, an area of law that is neither "a sensitive area of social policy" nor an issue of land use "that is best left to the states to address" and thus not subject to the minimal standard of uncertainty offered to local land use policies.  *Id.*

1  sufficient countervailing interests to justify abstention." *City of Rancho Palos Verdes*, 622
2  F. Supp. 2d at 967.[16] Accordingly, the Court grants Defendants' request for abstention.

3          Having decided that abstention under Pullman is appropriate, the Court must now
4  consider the proper procedure to adopt regarding Plaintiff's first cause of action.  Though
5  the Court finds abstention is warranted, the Court disagrees with the Defendants that
6  dismissal under *Pullman* is appropriate.  *Courtney v. Goltz*, 736 F.3d 1152, 1164 (9th Cir.
7  2013) ("We have generally considered dismissal inappropriate following a *Pullman*
8  abstention); *see also Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838,
9  841 (9th Cir.1979) ("If the court abstains under *Pullman*, retention of jurisdiction, and not
10 dismissal of the action, is the proper course.").  Instead, "[w]hen a district court stays a
11 case pursuant to *Pullman* abstention, it should maintain jurisdiction over the case rather
12 than dismiss it."  *Briseno v. Bonta*, 621 F. Supp. 3d 1065, 1071 (C.D. Cal. 2022) (citing
13 *Courtney v. Goltz*, 736 F.3d 1152, 1164 (9th Cir. 2013)).  The Defendants do not provide
14 any authority to the contrary.

15         Accordingly, the Court stays the first cause of action, insofar as it relates to
16 challenging the Ordinance.

17 **IV.    CONCLUSION**

18         For the foregoing reasons, the Court ORDERS the following:

19         (1)    The Defendants' Request for Judicial notice is **GRANTED-IN-PART** and
20                **DENIED-IN-PART**;

21         (2)    Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) Plaintiff's First
22                Cause of Action, insofar as it is based on the Letters, and Plaintiff's Second
23                through Seventh Causes of Action is **GRANTED** without prejudice;

24

---

25 [16] Because the Court finds abstention appropriate under *Pullman*, the Court does not
26 address abstention under *Colorado River* or Plaintiff's submission of a recent Ninth Circuit
   case addressing the *Colorado River* abstention doctrine.  (ECF No. 38); *see Ernest Bock,*
27 *LLC v. Steelman*, 76 F.4th 827, 843 (9th Cir. 2023) ("A docket management stay may not
28 issue in favor of parallel state proceedings if the *Colorado River* factors do not support a
   stay").

(3)  Defendant's Motion to Strike pursuant to Rule 12(f) plaintiff's request for punitive damages is **DENIED**;

(4)  Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) plaintiff's request for punitive damages is **GRANTED** with prejudice; and

(5)  Defendants' Motion to Abstain adjudication of the remaining portion of Plaintiff's first cause of action raising a state and federal constitutional challenge to the Ordinance is **GRANTED**.  The court retains jurisdiction over and **STAYS** the first cause of action, to the extent it asserts a state and federal constitutional challenge to the Ordinance, pending the state court's determination of *Warren v. City, Los Angeles County Superior Court (LASC),* Case No. 23STCP00060, challenging on state and federal constitutional grounds the Ordinance.  *See* (ECF No. 26-1).

The parties are directed to notify the court within ten calendar days of the resolution of the *Warren* matter by the state court.  The parties are also instructed to file with the Court as soon as practicable any requests of the Plaintiff to voluntarily dismiss the first cause of action or the case.  If the matter remains stayed through February 2024, the parties are instructed to file a stipulation by no later than March 1, 2024, setting forth the status of the *Warren* case in light of the reasons for the stay.  The Court vacates all other dates on the Court's calendar.

**IT IS SO ORDERED.**

DATED: November 8, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE